```
                  UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF KENTUCKY
                       CENTRAL DIVISION
                    LEXINGTON, KENTUCKY

UNITED STATES OF AMERICA,      ) Lexington Criminal
                               ) Action No. 17-18
        Plaintiff,             )
                               ) At Lexington, Kentucky
-vs-                           )
                               ) October 17, 2017
EDGAR VILLA-CASTANEDA,         ) 9:00 a.m.
                               )
        Defendant.             ) DAY 2
```

              TRANSCRIPT OF JURY TRIAL PROCEEDINGS
              BEFORE THE HONORABLE DANNY C. REEVES
                 UNITED STATES DISTRICT JUDGE


Appearances of Counsel:

On behalf of Plaintiff:        ADRIEN S. McKINESS, JR., ESQ.
                               Assistant U.S. Attorney
                               717 West Broadway
                               Louisville, Kentucky  40202

On behalf of Defendant:        BENJAMIN D. ALLEN, ESQ.
                               Gess Mattingly & Atchison, PSC
                               201 West Short Street
                               Lexington, Kentucky  40507

Court Reporter:                PEGGY W. WEBER, RPR
                               Official Court Reporter
                               U.S. District Court
                               P.O. Box 362
                               Lexington, Kentucky  40588
                               (859) 421-0814


Proceedings recorded by mechanical stenography,
transcript produced by computer.

1          (Whereupon, Day 2 of the Jury Trial proceedings

2    continued on Tuesday, October 17, 2016, at 9:00 a.m., on

3    the record in open court, without the juror members

4    present, as follows.)

5               THE COURT:  Thank you.

6               The record will reflect that counsel and the

7    defendant are present in the courtroom.

8               The jury is not present at this time.  We'll

9    bring the jury in in just a moment.

10              There were four minor changes that I found

11   after our instructions conference, and I want to go over

12   those with you, the final instructions.

13              Page 3, instruction number 2, paragraph

14   numerical 3, I've changed that sentence to read, "The

15   lawyers may have talked about the law during their

16   arguments," to reflect that I'll be giving the

17   instructions after the arguments rather than before.

18              Page 20, instruction number 14, first sentence,

19   "That concludes the part of my instructions explaining

20   the elements of the crimes," plural, as opposed to

21   singular, which was in the original.

22              Page 31, instruction number 25, the first

23   sentence, it now reads, "Now that all of the evidence is

24   in and the arguments are completed," it previously read

25   "and after the arguments are completed."  Again, to

1   reflect that the instructions are given afterwards.

2          And then finally, page 35, instruction

3   number 29, now, the last sentence originally read, "You

4   decide for yourselves if the government has proved each

5   defendant guilty," and I've changed that to "the

6   defendant guilty," and then I've added a phrase at the

7   end, again, "the defendant guilty beyond a reasonable

8   doubt with respect to each count."  So I've included that

9   to indicate that it's two counts as opposed to one.

10         Those are the only other changes I found.  Did

11  the attorneys find anything else that we need to take up?

12         MR. McKINESS:  No, sir.

13         THE COURT:  No.  Mr. Allen?

14         MR. ALLEN:  No, Your Honor.

15         THE COURT:  All right.  Are we ready to bring

16  the jury in?

17         MR. McKINESS:  Yes, sir.

18         MR. ALLEN:  Yes, Your Honor.

19         THE COURT:  All right.  We'll bring the jury in

20  at this time.

21      (Whereupon, the juror members enter the courtroom.)

22         THE COURT:  Thank you, and please be seated.

23         Good morning everyone.

24         The record will reflect that all members of the

25  jury are present.

1            Again, counsel and the defendant are also
2   present in the courtroom.

3            Ladies and gentlemen, at this time we will
4   proceed with the closing arguments on behalf of the
5   parties, and then after the closing arguments have been
6   presented, I will read the jury instructions to you.

7            And I will advise you that you will also
8   receive the copy that I'll be reading from that you can
9   take back into the jury deliberation room.

10           All right.  Thank you.

11           By rule the United States proceeds first.
12  Having the burden of proof, Mr. McKiness, you may
13  proceed.

14           MR. McKINESS:  Thank you, Your Honor.

15           Ladies and gentlemen of the jury,
16  Mr. Edgar Villa-Castaneda plotted to kill
17  Assistant United States Attorney Rob Duncan because he
18  was doing his job, he was holding him accountable for his
19  crimes, and prosecuting him for his crimes.

20           Mr. Edgar Villa-Castaneda admitted to
21  Special Agent Whitehead that he made the threats against
22  Mr. Duncan's life.  He admitted that he attempted to pay
23  someone to kill Mr. Duncan.

24           Now, the defense may argue that these were only
25  words, but as you'll see by the jury instruction, these

1   words are crimes because of his actions.

2           And if you remember the testimony of some of

3   the witnesses, you'll recall that one of them said they

4   heard people complain about their lawyers all the time.

5   That's not a crime.  It is absolutely not a crime to say

6   I don't like my prosecutor, I hate him, I don't like what

7   he's doing to me, I don't like what he's doing to my

8   family.  I just don't like it.

9           It is a crime to threaten to kill your

10  prosecutor for the prosecution, for doing their jobs.

11          It is a crime to attempt to hire someone to

12  murder the prosecutor because they did their job.

13          And the thing that you'll have to remember is

14  whether Mr. Villa actually wanted to kill the prosecutor,

15  doesn't matter.  You'll see when you look at the jury

16  instructions, that he doesn't have to actually want to

17  kill the prosecutor.  He doesn't even have to have the

18  means to kill the prosecutor.  The only thing that

19  matters is that when he made the threats, that they were

20  true threats, that people that heard the threats took

21  them as true, that a reasonable person making those

22  threats and saying it repeatedly and giving detail after

23  detail, it would seem true.

24          It matters if they took actions that made their

25  attempts to hire someone to murder the prosecutor real.

1           So -- but what your job is going to have to be
2    is remember all the testimony you heard and the evidence
3    that you saw and think to yourself, all right, what did I
4    hear?  These were the facts that were corroborated by
5    Gill Garrett, Talbert Marshal, and Mr. Villa himself when
6    he admitted these things to Special Agent Whitehead, that
7    Mr. Villa told Mr. Marshal and Mr. Garrett that he wanted
8    to kill Mr. Duncan because of the prosecution of him and
9    his son.
10          The other corroborated fact that Mr. Villa told
11   Marshal and Garrett that he would pay to have Mr. Duncan
12   killed.
13          He told Mr. Marshal that he would give money
14   that he had stashed at his sister's house to his unnamed
15   hit man and that they could do the job.
16          He told Mr. Garrett that he would pay his
17   girlfriend to do it so she could have money for drugs.
18          And, lastly, Mr. Villa told Mr. Marshal that
19   you can call my sister to set it up, and he gave him his
20   sister's phone number.  Why go that far if it's just idle
21   talk?  Why go that far if you're just complaining about
22   your lawyer?  He took too many steps.
23          Now, again, you're going to get a copy of the
24   jury instructions, and they're going to list them out.
25   And I'm actually going to go through the jury

1   instructions with you because the lawyers had an

2   opportunity to look at them before you-all.  We each have

3   a copy.  And when you look at the jury instructions,

4   you'll see there's really only one issue per count.

5            In Count 1 the threat to a -- of a federal

6   officer, the issue is going to be element two, whether it

7   was a true threat that was made.  Everything else has

8   essentially been admitted by the defendant.

9            Count 2 is solicitation to commit the murder of

10  AUSA.  It is -- it will be the third element.

11           The third elements states, "Did the

12  solicitation to commit the murder occur under

13  circumstances that strongly corroborate Mr. Villa's

14  intent to have Mr. Duncan killed?"  That's the only other

15  issues that haven't essentially been admitted.

16           Now, when you're looking at the evidence and

17  determining whether there's reasonable doubt on any of

18  the elements, you're going to have to determine

19  credibility of the witnesses and what they told you.

20           Let's start with the credibility of the last

21  witness you heard, the guy that killed his brother.  His

22  testimony was that you shouldn't trust Mr. Marshal

23  because he got a marker to do drawings.  That was the

24  reason he gave.

25           Now think back to the first witness you heard,

1    Mr. Talbert Marshal, who wrote a letter to his lawyer

2    reporting the threats on Mr. Duncan's life, and asked for

3    nothing, and got nothing.  Yet he did it because he

4    didn't want to be an accomplice to the murder of a

5    prosecutor.

6           Look at the credibility of the witnesses.  Read

7    the letter he wrote, and you'll get to take it back with

8    you, Government's Exhibit 1, and ask yourself do these

9    words seem like a person who has a reason to lie about

10   this?  He told you his deal was already done before this

11   even happened.

12          And as I stated, the Judge is going to provide

13   you with the jury instructions after we do our closing

14   arguments.  The burden of proof will be beyond a

15   reasonable doubt, and I'll ask you when you read through

16   everything, and you go through it all in your minds,

17   don't forget your common sense.  One plus one does equal

18   two.  Even if someone says, well, what if one is larger

19   and the other one is smaller, it's still one plus one is

20   still going to equal two.

21          Now, for the first count, threatening federal

22   officer, the first element is that the defendant

23   threatened to murder a federal law enforcement officer.

24          Now, the evidence of that was fairly strong and

25   admitted.  So I'll tell you like this.  Both Talbert

1    Marshal and Mr. Gill Garrett testified that they heard

2    threats from the defendant Villa against the life of

3    Mr. Duncan.   That's the first element.

4           The second element is that the threat is a true

5    threat.   Now, it doesn't have to be subjectively true.

6    It just has to be seen as true based on your actions and

7    the way that everyone heard them and how many times you

8    made the threats, how much detail you gave about the

9    threats.   Both Mr. Marshal and Mr. Garrett testified that

10   they took the threats seriously.

11          Mr. Marshal told you he took the threat

12   seriously because of the repeated nature of the threats

13   and the fact that he gave -- that Mr. Villa gave him his

14   sister's phone number to connect the money to the hit

15   man.

16          Now, in the jury instructions you're going to

17   get a definition for what true threat is, and I put that

18   on here for you, "And a true threat is defined as one

19   where the speaker means to communicate a serious

20   expression of an intent to commit an act of unlawful

21   violence to a particular person or individual.   It can be

22   distinguished from idle or careless talk or something

23   said in a joking manner."

24          Now, I put this in red because I think it's

25   something to focus on.   "For a statement to be a true

1  threat, the defendant must have made the statement with

2  the knowledge that the statement would be viewed as a

3  threat."

4          What person talks about killing their

5  prosecutor over and over and over again to multiple

6  people and doesn't think the people are going to take him

7  seriously?

8          What person offers to pay you money and tells

9  you where the money is at to kill a prosecutor, and they

10 don't expect you to think they want that to happen?  Our

11 words and actions of consequences, this is dangerous

12 stuff.

13         Mr. Duncan had to have 24-hour surveillance

14 from the United States Marshals, and had to explain to

15 his family, his kids, why there are men with guns around

16 them at all times.

17         Now, to determine what a true threat is -- and

18 this is also in your jury instructions -- "To determine

19 whether the defendant threatened the federal law

20 enforcement officer, these are things you should

21 consider.  Consider the circumstances under which the

22 statements were made, including the context with respect

23 to the surrounding conversations, the language the

24 defendant used, and the reactions of those who heard the

25 statements."

1          You heard testimony from the witnesses that
2  heard those statements, and you saw their reactions.  You
3  know they all thought it was a true threat.  Why else
4  would you report it?  Why, as a prosecutor, would you
5  have 24-hour surveillance for a fake threat?  Mr. Duncan
6  told you he's been threatened before.  Other times he
7  didn't take it serious.  This one they took serious.
8  They took it serious because of the people they know that
9  Mr. Villa is connected with from his conspiracy in a drug
10 organization.

11          And the third element for threatening a federal
12 official is that the defendant intended the threat as an
13 act of retaliation against the officer on account of the
14 performance of their official duties.  And we know it's
15 an act of retaliation because every chance he got to tell
16 somebody, that's what he said.  I want to kill the
17 prosecutor because I don't like the way he's treating me
18 and my son.  I don't like the way that my son and I are
19 being portrayed.  I don't like that he's going to
20 separate me and my family.  That's retaliation.

21          Moving to the second charged crime in the
22 indictment, solicitation to commit a crime of violence,
23 and we can call that what it is.  It's solicitation to
24 commit murder.

25          The first element is lengthy, and I'll go

1    through it, and these will also be in your jury

2    instructions.

3            The first element is that "The defendant

4    intended that another person engage in conduct

5    constituting a felony that has an element the use,

6    attempted use, or threatened use of physical force

7    against the person of another in violation of the laws of

8    the United States."

9            Now, that's the lawyer words.  The lay words

10   are the defendant wanted another person to murder a

11   federal officer.  That's what that says.  That's the

12   first thing you have to find by a reasonable doubt.

13           The evidence of that was that Mr. Marshal

14   testified that Villa repeatedly offered money to have

15   someone kill Mr. Duncan, an Assistant United States

16   Attorney, and attempted to have Mr. Marshal coordinate

17   payment from money he had stashed at his sister's house

18   to pay Marshal's friend or imaginary person, that he

19   didn't know was fake, to commit the murder.

20           The second element is that the defendant

21   solicited, induced, or endeavored to persuade another

22   person to engage in conduct constituting a felony that

23   has an element the use, attempted use, or threatened use

24   of physical force against the person of another in

25   violation of the laws of the United States.

1            Now, I'll break that down for you too.  The

2    second element is saying the defendant did something to

3    persuade someone else to commit the murder, something

4    like offer to pay them $25,000, something like offer to

5    pay 15,000 up front, things like that.

6            The evidence that we presented that satisfies

7    this element is that Mr. Marshal testified that Villa

8    again repeatedly offered to pay him money to have someone

9    kill Assistant United States Attorney Mr. Duncan and

10   attempted to have Mr. Marshal coordinate with Villa's

11   sister to get that payment.

12           Also, evidence was when Mr. Gill Garrett told

13   you that Villa offered him money for his girlfriend to

14   commit the murder with a gun he said he had stashed

15   somewhere.  And Villa told him, hey, she can buy drugs

16   with that money, and she can put some money on your books

17   and help you out.  That's the elements -- the evidence of

18   the second element.

19           The third element is the only one that I think

20   really stands out here, and that is that the conduct

21   described in the second element, the payment for the

22   murder or attempted payment for the murder, occurred

23   under circumstances strongly corroborative of the

24   defendant's intent.

25           And what that means is just that the defendant

1  did something to show that he was serious, something that

2  corroborated the intent to pay someone.  Just saying it

3  again, isn't a crime.  Saying, hey, I would like to pay

4  someone to kill that prosecutor, almost a crime.  When he

5  gives his sister's phone number to Mr. Marshal so that he

6  can call her and set up the payment to have him killed,

7  that satisfies this element.

8         Now, you're going to see in your jury

9  instructions that you cannot convict a defendant on his

10  own statements alone.  You have to have something that

11  corroborates at least some portion of his statement

12  before you can convict him.

13         Now, what I just did for you is I went through

14  every element of every crime charged and never mentioned

15  what Mr. Villa admitted to.  So you already have the

16  corroborative evidence without his admissions, but with

17  his admissions it's solid.

18         He admitted to Special Agent Whitehead that he

19  threatened Mr. Duncan numerous times.  He even mentioned

20  one of the people who he talked to when he made his

21  threats.  He said a guy named Marshal, don't remember his

22  first name, but his last name is Marshal.

23         You heard Mr. Talbert Marshal testify that he

24  heard many, many threats against Mr. Duncan.

25         He admitted that he told Marshal that he would

1 pay him for one of his friends to commit the murder with

2 money he had hidden at his sister's house.  That's what

3 he told the FBI.

4          And, again, you heard that same story from

5 Mr. Marshal.

6          He admitted that he told Marshal to call his

7 sister, the third and final step in the solicitation to

8 commit murder.  He admits that.

9          And, again, that was also corroborated by

10 Mr. Marshal's testimony.

11          Now, as I told you earlier, there were the two

12 central issues.  For Count 1 it's did he make a true

13 threat, and for Count 2 did the solicitation to commit

14 murder occur under circumstances that strongly

15 corroborate his intent to have Mr. Duncan killed?

16          So let's focus in on those two things.  Was

17 there a true threat?  Again, Mr. Marshal testified that

18 he took Villa's threat seriously because of the repeated

19 nature of the threats.  Again and again, not once, not

20 twice, over and over.

21          Also, the fact that he gave him his sister's

22 phone number to call her.  That's a big step.

23          Was it a true threat?  Mr. Gill Garrett

24 testified that he took the threat seriously because of

25 how often Mr. Villa brought it up and the look in his

1    eyes, the emotional way he would talk about this, the

2    money that he promised.  Those are reasons that he took

3    it seriously.

4            Mr. Duncan testified that he took the threat

5    seriously because of the people that Mr. Duncan -- excuse

6    me, the people that Mr. Villa is connected with in the

7    drug trafficking organization.

8            The second central issue, did the solicitation

9    occur under circumstances corroborative of his intent to

10   kill Mr. Duncan?  Again, the phone number, giving that --

11   giving your sister's phone number to a man in jail to set

12   up a meet, and you heard the testimony.  They go

13   somewhere in Winchester, a Kroger, a Walmart, she would

14   pull up and see a car, throw the money in the car, lock

15   the door, walk away.  That way no one has to see each

16   other.  No one knows who each other is so that it can

17   happen.  That was the plan, and he gave his sister's

18   phone number to make that happen.

19           In the end, you guys are going to go back to

20   the jury room and deliberate, and as I've stated, don't

21   leave your common sense at the door.  One plus one is

22   two.

23           Don't forget the evidence that you heard, the

24   testimony that you heard, the documents that you've seen,

25   which will go into the back with you.  Those are the

1    things to rely on.

2          Remember that Mr. Villa himself admitted to

3    almost every element of the crimes that are charged.  The

4    threats were real, they were taken seriously, and

5    Mr. Villa acted like a person who was serious.

6          Ladies and gentlemen, it's your responsibility

7    to look at it all, find Mr. Villa guilty on all counts.

8          Thank you.

9          THE COURT:  Thank you.

10          Mr. McKiness, you may reserve the balance of

11    your time for rebuttal.

12          MR. McKINESS:  Thank you.

13          THE COURT:  Thank you.

14          Mr. Allen.

15          MR. ALLEN:  May it please the Court,

16    Mr. McKiness.

17          THE COURT:  Mr. Allen.

18          MR. ALLEN:  Ladies and gentlemen.

19          Mr. McKiness is right when he opened this case,

20    this case is about words, and as I told you Mr. Villa is

21    not here to argue that words don't have consequences.

22          However, your question that you must answer is

23    whether the government has provided sufficient evidence

24    to you to punish Mr. Villa for his words.

25          It's not a case about drugs.  This case is not

1    about guns.  This is a case where you're asked to punish

2    someone for what he said.

3           And Mr. Villa is not here proclaiming to be a

4    saint, far from it.  He admitted to a crime.  He accepted

5    responsibility for that crime by entering a guilty plea,

6    and he's currently serving a lengthy sentence for that

7    crime.  And you heard this from Mr. Duncan.

8           He is not here, however, for that crime.  He

9    maintains his innocence to the crimes alleged in the

10   indictment in this case.

11          Now, the government has many advantages over

12   Mr. Villa, and has many, plenty of well-trained lawyers,

13   law enforcement agents, paralegals, but Mr. Villa has one

14   distinct advantage.  That is the presumption of

15   innocence.  The presumption of innocence.  You are

16   required to presume that he is innocent until proven

17   guilty.

18          That is -- that is one of the bedrocks of our

19   criminal justice system, and like his freedom of speech,

20   is an important right.

21          Now, what does this mean, you must presume he

22   is innocent unless the government proves his guilt beyond

23   a reasonable doubt?  I'm going to let the Judge explain

24   to you what all that means, but I can tell you that

25   that's a difficult standard to meet.

1              In fact, here the government has failed to

2    overcome that burden.  Well, let's talk about that.

3              Now, in order to convict Mr. Villa under

4    Count 1 you must find that he made a threat against

5    Mr. Duncan, and that it was a true threat.

6              Now, how does the government try to prove this?

7    Now, Mr. McKiness left out a couple things in his

8    argument to you.

9              First of all, let's talk about Mr. Whitehead,

10   Agent Whitehead's testimony.  We don't truly know what

11   Mr. Villa said because Agent Whitehead did not record the

12   interview, the admission that he relies so heavily on.

13   They did not record that interview.

14             What do we know about that?  Well, Agent

15   Whitehead admitted that he did not follow the FBI's

16   policy requiring all agents, barring certain exceptions,

17   to record interviews within their custody.

18             Now, when I asked him about this on

19   cross-examine -- in his direct testimony he said, well,

20   Mr. Villa wasn't in custody.  Well, you heard what he

21   said when I asked him.  Well, he was in custody, wasn't

22   he?  He was in United States Marshal's custody.  That

23   policy applied, yet he didn't follow it, he didn't record

24   the interview.

25             Now, let's think about why that is important.

1   It is important because you want a document, you want a

2   record of what that person said if you're going to use it

3   against him.  They didn't do that here.

4         Now, he tried to explain again, well, you know,

5   we changed offices, and we couldn't record in there.

6         Also pointed out, if you recall, that there's a

7   process there for that.  You have to document that with

8   the U.S. Attorney.  He didn't do that.

9         So, again, what we have is what Mr. -- Agent

10  Whitehead said that Mr. Villa said.  And, again, if you

11  recall, that's not the only policy that Agent Whitehead

12  has violated in the past.  You recall he also was cited

13  for lack of candor, slash, lying not under oath.  Now,

14  call it what you want, but lying is lying, ladies and

15  gentlemen.

16        The other question we must ask is why in the

17  world would someone sit down and make such a statement, a

18  statement that could cost them dearly?

19        Now, Mr. Duncan testified that around the time

20  that Mr. Villa was making this alleged threat he was

21  negotiating a plea agreement with the United States.  In

22  fact, he went further than that.  Mr. Villa was

23  cooperating with the United States government.  And as

24  you heard Mr. Duncan say, in a large scale drug case like

25  that, that puts your life at risk, not only does that put

1  your life at risk but your family's life at risk.

2       So, again, why in the world would Mr. Villa sit

3  down and make such a statement?

4       Let's talk about Talbert Marshal and

5  Gill Garrett. While it is true at the time he spoke with

6  FBI, Mr. Garrett had a plea agreement. But as he said,

7  that plea agreement had not been accepted yet by the

8  Court. He could have very easily gone into court and had

9  that plea agreement rejected. He was facing a serious

10  drug crime. He could have still gone to jail for a

11  significant period of time. So let's not sugar-coat it.

12  He had an incentive at the time he talked to the

13  government to help himself.

14       And as Mr. Marshal testified, he's not

15  completely out of the woods as well. While he may have

16  served his sentence, he's still on supervised release.

17  He could still face incarceration. So let's not let

18  Mr. Marshal off the hook so completely. He had something

19  to lose, and he had something to gain by testifying

20  against Mr. Villa here.

21       And then there's Mr. Garrett. Mr. Garrett, who

22  at the time he spoke with investigators, was facing a

23  mandatory life sentence. As he said, his natural life if

24  he had been convicted without a plea agreement he could

25  have faced or would have faced a life sentence.

1          And so as you can imagine, he certainly had

2  great incentive to speak to the FBI and help himself out.

3  And as he told you after he testified today, he might

4  receive a reduction of his sentence, a sentence for a

5  crime, by the way, that resulted in someone's death.

6          So Mr. McKiness pointed out, it is your job to

7  judge credibility of these witnesses.  And I submit to

8  you that Mr. Marshal -- neither Mr. Marshal, Mr. Garrett,

9  or Agent Whitehead for that matter are very credible in

10 this matter.

11         We'll talk about Rob Duncan.  I can tell you I

12 have practiced cases with Rob Duncan for many years.  I

13 have no doubt that he was sincere in the fear for him or

14 his family, but let's think about where that came from.

15 Remember in my opening I talked about the game of

16 telephone; right?  Someone said to someone else and says

17 it to someone else and says it to someone else.  The

18 story can change.

19         He didn't hear this threat directly from

20 Mr. Villa.  He heard it from someone who heard it from

21 someone else.  Context can change, and context here is

22 important because, again, you're being asked to punish

23 someone for what they said.  Okay?

24         And Mr. McKiness talked about the repeated

25 nature of the alleged threats.  Well, no one can

1   specifically tell you the number of times.  They don't

2   know.  This was two years ago.

3          And there's no written evidence about the

4   nature of Mr. Villa's alleged threat outside of this

5   self-serving letter written by Mr. Marshal.

6          There are no recordings, no video recordings,

7   no recorded telephone calls, nothing but words that have

8   been passed out of -- and taken out of context.

9          And ask yourselves as well, how seriously did

10  the government take this threat?  You heard that

11  Mr. Villa allegedly made the threat sometime in

12  September, around September 18th, 2015, or at least

13  that's the date that Mr. Marshal sent his letter to his

14  attorney.

15         You also heard Agent Whitehead testify that the

16  government indicted Mr. Villa around February of 2017.

17  My calculation that's about a year, year and four months

18  and approximately 15 days from when that letter went out.

19  You want to break it down even more, that's 503 days

20  approximately since Mr. Villa allegedly made such a

21  serious threat to assassinate a federal prosecutor.

22         Now, you would ask surely the government was

23  building its case over this time.  Not really.  Sure it

24  conducted interviews during October and November of 2015,

25  but you heard Agent Whitehead testify that they never

1    searched Ms. Villa's apartment.  They knew where she was.

2    They knew her phone number.  They didn't talk to her.

3    They didn't search the apartment to see if there was any

4    money there.  How seriously did the government take the

5    threat?

6         Ladies and gentlemen, the government has not

7    proven Mr. Villa's alleged statements were true threats

8    in this matter.

9         Now, I'll talk about Count 2 as well.  And,

10   again, Count 2 also turns on what Mr. Villa said.  Again,

11   the context and meaning what Mr. Villa said about two

12   years ago is important.  And again we are left with that

13   same game of telephone.  One person says something to

14   someone who says it to someone else who says it to

15   someone else.  And this should not be sufficient to

16   convict Mr. Villa for what is a serious crime.

17        Ladies and gentlemen, pretty soon you will

18   begin your deliberations, and at some point this case

19   will end.

20        Later today you'll go back to your jobs, your

21   families, your homes, and after some time you may forget

22   about this case.  At most it's probably been a small part

23   of your lives.  But for Mr. Villa this is his whole life.

24   And it's a life we leave when you leave the case in your

25   hands, and we ask that you return a verdict of not guilty

1   in this matter.

2             Thank you, and thank you for your time.

3             THE COURT:  Thank you, Mr. Allen.

4             Mr. McKiness, you have the balance of your time

5   for rebuttal.

6             MR. McKINESS:  Ladies and gentlemen, if this

7   was a game of telephone, then it must have been a

8   three-way call, because you heard three witnesses tell

9   the same story.  It wasn't variations here he was

10  threatening other folks.  The story was he threatened to

11  kill Mr. Duncan.  The story was he offered to pay both

12  Mr. Marshal and Mr. Garrett money to have Mr. Duncan

13  killed.

14            So I don't see and I haven't heard where the

15  story got mixed up.  I haven't heard a context that was

16  different from what Mr. Duncan heard as opposed to what

17  the witnesses testified to today, both Mr. Marshal,

18  Mr. Garrett, and Special Agent Whitehead.

19            And let's talk about Special Agent Whitehead

20  for a minute.  His reputation is good, and you heard him

21  testify what happened.  He was cited for not being

22  truthful because he didn't mention that his children were

23  in his work vehicle after he picked them up from school.

24  He's been an FBI agent for over 20 years, and that's the

25  only thing that's on his record is he didn't say that his

1  kids were in his car.  Ask yourself if that's good enough

2  reason not to believe the statement that he gave you that

3  was exactly the same as the statements of Mr. Marshal and

4  the statements of Mr. Garrett.

5          And don't fall for the trap, Mr. Marshal had

6  nothing to gain from his statements.  You saw him sit up

7  here.  He didn't want to testify.  He didn't want to be

8  involved in this.  He just did not want to have any

9  murder on his conscience.

10          You never heard any evidence about Mr. Marshal

11  having a deal, seeking a deal, or receiving any benefit.

12  You know why?  Because there is none.  There is no deal.

13  There is no benefit.  He did it because he didn't want

14  this on his conscience.

15          Mr. Villa threatened to kill a prosecutor for

16  doing his job, and it didn't end there.  He tried to pay

17  and get his friends in jail to find someone he could pay

18  to murder that man because he did his job, and he gave

19  details.

20          And defense counsel is right.  It was two years

21  ago, and they didn't say exactly how many times they

22  heard it.  But you know what?  They all told you they

23  heard it more than once.  They told you on this time he

24  said this, another time he gave this other detail.  He

25  talked about when he gets out of jail he will have a

1   .22 caliber rifle, and he'll shoot him out of his truck

2   at the steps of the courthouse.

3        There is no reasonable doubt here.  Please find

4   Mr. Villa guilty of all counts.

5        Thank you.

6        THE COURT:  Thank you, counsel.

7        Now, members of the jury, now it's time for me

8   to instruct you about the law that you must follow in

9   deciding this case.

10        I will start by explaining your duties and the

11   general rules that apply in every criminal case.

12        And after that, I will explain the elements, or

13   parts, of the crimes that the defendant is accused of

14   committing.

15        Then I'll explain the defendant's position.

16        And, next, I'll explain some of the rules you

17   must use in evaluating particular testimony and evidence.

18        And last, I'll explain the rules that you must

19   follow during your deliberations in the jury room, and

20   the possible verdicts you may return.

21        Please listen carefully to all of these

22   instructions.

23        You have two main duties as jurors.  The first

24   one is to decide what the facts are from the evidence

25   that you saw and heard here in court.  Deciding what the

1   facts are is your job, and not mine.  Nothing that I've

2   said or done during the trial was meant to influence your

3   decision about the facts in any way.

4          Your second duty is to take the law that I give

5   you, apply it to the facts, and decide if the government

6   has proved the defendant guilty beyond a reasonable

7   doubt.

8          It is my job to instruct you about the law, and

9   you're bound by the oath that you took at the beginning

10  of the trial to follow the instructions that I give you,

11  even if you personally disagree with them.

12         Now, this includes the instructions that I gave

13  you before and during the trial, and these instructions.

14  All of the instructions are important, and you should

15  consider them together as a whole.

16         The lawyers may have talked about the law

17  during their arguments, but if what they said is

18  different from what I say, then you must follow what I

19  say.  What I say about the law controls.

20         Perform these duties fairly.  Do not let any

21  bias, sympathy, or prejudice that you may feel toward one

22  side or the other influence your decision in any way.

23         As you know, the defendant has pleaded not

24  guilty to the crimes charged in the indictment.  The

25  indictment is not any evidence at all of guilt.  It's

1    just the formal way that the government tells the

2    defendant what crimes he's accused of committing.  It

3    does not even raise any suspicion of guilt.

4           Instead, the defendant starts the trial with a

5    clean slate, with no evidence at all against him, and the

6    law presumes that he is innocent.

7           This presumption of innocence stays with him

8    unless the government presents evidence here in court

9    that overcomes the presumption, and convinces you beyond

10   a reasonable doubt that he's guilty.

11          This means that the defendant has no obligation

12   to present any evidence at all, or to prove to you in any

13   way that he's innocent.  It's up to the government to

14   prove that he is guilty, and this burden stays on the

15   government from start to finish.

16          You must find the defendant not guilty unless

17   the government convinces you beyond a reasonable doubt

18   that he is guilty.

19          The government must prove every element of the

20   crimes charged beyond a reasonable doubt.  Proof beyond a

21   reasonable doubt does not mean proof beyond all possible

22   doubt.

23          Possible doubt or doubts based -- or doubts

24   based purely on speculation are not reasonable doubt.  A

25   reasonable doubt is a doubt based on reason and common

1   sense.  It may arise from the evidence, the lack of

2   evidence, or the nature of the evidence.

3         Proof beyond a reasonable doubt means proof

4   which is so convincing that you would not hesitate to

5   rely and act on it in making the most important decisions

6   in your own lives.

7         If you are convinced that the government has

8   proved the defendant guilty beyond a reasonable doubt,

9   say so by returning a guilty verdict.

10         If you're not convinced, say so by returning a

11   not guilty verdict.

12         Now, you must make your decision based only on

13   the evidence that you saw and heard here in court.  Do

14   not let rumors, suspicions, or anything else that you may

15   have seen or heard outside of court influence your

16   decision in any way.

17         The evidence in this case includes only what

18   the witnesses said while they were testifying under oath

19   and the exhibits that I allowed into evidence.

20         Nothing else is evidence.  The lawyers'

21   statements and arguments are not evidence.  Their

22   questions and objections are not evidence.  And my legal

23   rules are not evidence.  And my comments and questions

24   are not evidence.

25         During the trial I did not let you hear the

1   answers to some of the questions that the lawyers asked.

2   Do not speculate about what a witness might have said.

3   This is not evidence.  You're bound by your oath not to

4   let it influence your decision in any way.

5           Make your decision based only on the evidence,

6   as I defined it here, and nothing else.

7           Now, you should use your common sense in

8   weighing the evidence.  Consider it in light of your

9   everyday experience with people and events, and give it

10  whatever weight you believe it deserves.  If your

11  experience tells you that certain evidence reasonably

12  leads to a conclusion, you're free to reach that

13  conclusion.

14          Now, some of you've heard the terms "direct

15  evidence" and "circumstantial evidence."

16          Direct evidence is simply evidence like the

17  testimony of an eyewitness which, if you believed it,

18  directly proves a fact.

19          If a witness testified that he saw it raining

20  outside, and you believed him, that would be direct

21  evidence that it was raining.

22          Circumstantial evidence is simply a chain of

23  circumstances that indirectly proves a fact.

24          If someone walked into the courtroom wearing a

25  raincoat covered with drops of water and carrying a wet

1   umbrella, that would be circumstantial evidence in which

2   you could conclude it was raining.

3            It's your job to decide how much weight to give

4   the direct and circumstantial evidence.  The law makes no

5   distinction between the weight that you should give to

6   either one, or say that one is any better evidence than

7   the other.  You should consider all of the evidence, both

8   direct and circumstantial, and give it whatever weight

9   you believe it deserves.

10           Now, another part of your job as jurors is to

11  decide how credible or believable each witness was.  This

12  is your job, and not mine.

13           It's up to you to decide if a witness's

14  testimony was believable, and how much weight you think

15  it deserves.  You're free to believe everything that a

16  witness said, or only part of it, or none at all.  But

17  you should act reasonably and carefully in making these

18  decisions.

19           Let me suggest some things for you to consider

20  in evaluating each witness's testimony.

21           Ask yourself if the witness was able to clearly

22  hear or see the events.  Sometimes even an honest witness

23  may not have been able to see or hear what was happening

24  and may have made a mistake.

25           Ask yourself how good the witness's memory

1   seemed to be.  Did the witness seem able to accurately

2   remember what happened?

3           Ask yourself if there was anything else that

4   may have interfered with the witness's ability to

5   perceive or remember the events.

6           Ask yourself how the witness acted while

7   testifying.  Did the witness appear honest?  Or did the

8   witness appear to be lying?

9           Ask yourself if the witness had any

10  relationship to the government or the defendant, or

11  anything to gain or lose from the case that might

12  influence the witness's testimony.

13          Ask yourself if the witness had any bias, or

14  prejudice, or reason for testifying that might cause the

15  witness to lie or slant the testimony in favor of one

16  side or the other.

17          Ask yourself if the witness testified

18  inconsistently while on the witness stand, or if the

19  witness said or did something, or failed to say or do

20  something, at any other time that is inconsistent with

21  what the witness said while testifying.

22          If you believe that the witness was

23  inconsistent, ask yourself if this makes the witness's

24  testimony less believable.  Sometimes it may, and other

25  times it may not.

1          Consider whether the inconsistency was about
2     something important, or about some unimportant detail.
3          Ask yourself if it seemed like an innocent
4     mistake, or if it seemed deliberate.
5          And ask yourself how believable the witness's
6     testimony was in light of all the other evidence.  Was
7     the witness's testimony supported or contradicted by
8     other evidence that you found believable?  If you believe
9     that a witness's testimony was contradicted by other
10    evidence, remember that people sometimes forget things,
11    and that even two honest people who witness the same
12    event may not describe it exactly the same way.
13         These are only some of the things that you may
14    consider in deciding how believable each witness was.
15         You may also consider other things that you
16    think shed light on the witness's believability.  Use
17    your common sense and your everyday experience in dealing
18    with people.  And then decide what testimony you believe
19    and how much weight you think it deserves.
20         Now, one more point about the witnesses.
21    Sometimes jurors wonder if the number of witnesses who
22    testified makes any difference.
23         Do not make any decision based only on the
24    number of witnesses who testified.  What is more
25    important is how believable the witnesses were, and how

1  much weight you think their testimony deserves.

2  Concentrate on that and not the numbers.

3         Now, that concludes the part of my instructions

4  explaining the -- your duties and the general rules that

5  apply in every criminal case.  In a moment, I'll explain

6  the elements of the crimes that the defendant is accused

7  of committing.

8         But before I do that, I want to emphasize that

9  the defendant is only on trial for the particular crimes

10  charged in the indictment.  Your job is limited to

11  deciding whether the government proved the crimes

12  charged.

13         Also, keep in mind that whether anyone else

14  should be prosecuted and convicted for these crimes is

15  not a proper matter for you to consider.

16         The possible guilt of others is no defense to a

17  criminal charge.

18         Your job is to decide if the government has

19  proved this defendant guilty.  Do not let the possible

20  guilt of others influence your decision in any way.

21         The defendant has been charged with two crimes.

22  The number of charges is not evidence of guilt, and this

23  should not influence your decision in any way.

24         It is your duty to separately consider the

25  evidence that relates to each charge, and return a

1   separate verdict for each one.

2          For each charge, you must decide whether the

3   government presented proof beyond a reasonable doubt that

4   the defendant is guilty of that particular charge.

5          Your decision on one charge, whether it is

6   guilty or not guilty, should not influence your decision

7   on the other charge.

8          Now let me go to the specific counts.

9          The defendant is charged in Count 1 with

10  threatening to murder a federal law enforcement officer

11  with the intent to retaliate against him on account of

12  the performance of his official duties.

13         Title 18 of the United States Code,

14  Section 115(a)(1)(B), provides it is a crime to -- and

15  I'll quote, "threaten to assault, kidnap, or murder a

16  United States official, a United States Judge, or a

17  federal law enforcement officer with the intent to

18  impede, intimidate, or interfere with such official,

19  Judge, or a law enforcement officer while engaged in the

20  performance of his official duties, or with the intent to

21  retaliate against such person on account of the

22  performance of official duties during the term of service

23  of such person."

24         For you to find the defendant guilty of this

25  offense, you must find that the United States has proved

1  each of the following elements beyond a reasonable doubt.

2  There are three.

3           First, the defendant threatened to murder or

4  assault a federal law enforcement officer.

5           Second, the threat was a true threat.

6           Third, the defendant intended the threat

7  either:  To impede, intimidate, or interfere with the law

8  enforcement officer while engaged in the performance of

9  his official duties, or as an act of retaliation on

10  account of the federal law enforcement officer's

11  performance of his official duties.

12           Now, if you are convinced that the

13  United States has proved these elements beyond a

14  reasonable doubt, say so by returning a guilty verdict

15  on this count.

16           If you have a reasonable doubt regarding any of

17  the elements, you must find the defendant not guilty of

18  this charge.

19           Now, I will give you some additional

20  instructions to help explain some of the terms that I've

21  used.

22           The term "federal law enforcement officer" as

23  used in Title 18 of the United States Code, Section 115

24  includes an Assistant United States Attorney who

25  prosecutes criminal cases.

1            A quote, true threat, closed quote, is defined

2   as one where the speaker means to communicate a serious

3   expression of an intent to commit an act of unlawful

4   violence to a particular individual or group of

5   individuals.  It can be distinguished from idle or

6   careless talk, or something said in a joking manner.

7            For a statement to be a threat, the defendant

8   must have made the statement intending it to be a threat,

9   or with the knowledge that the statement would be viewed

10  as a threat.

11           To determine whether the defendant threatened a

12  federal law officer, you should consider the

13  circumstances under which the statement was made,

14  including its context with respect to surrounding

15  conversations, the language the defendant used, and the

16  reaction of those who heard the statement.

17           It's not necessary for the United States to

18  prove that the defendant had the ability to carry out the

19  threat, or even that the defendant had the subjective

20  intent to do so, but that he intended to make the threat.

21           Also, it's not necessary that the

22  United States -- excuse me.  It's not necessary for the

23  United States to prove that the threat was communicated

24  to the federal law enforcement officer.

25           Now, the defendant is charged in Count 2 of the

1  indictment with soliciting to -- soliciting the murder of

2  a federal law enforcement officer in violation of federal

3  law.

4          For you to find the defendant guilty of this

5  offense, you must be convinced that the United States has

6  proved each of the following elements beyond a reasonable

7  doubt.  There are also three elements.

8          First, that the defendant intended that another

9  person engage in conduct constituting a felony that has

10 as an element the use, attempted use, or threatened use

11 of physical force against the person -- person of another

12 in violation of the laws of the United States.

13         Second, that the defendant solicited, induced,

14 or otherwise endeavored to persuade another person to

15 engage in conduct constituting a felony that has as an

16 element the use, attempted use, or threatened use of

17 physical force against the person of another in violation

18 of the laws of the United States.

19         And, third, that the conduct that I've just

20 described in the second element occurred under

21 circumstances strongly corroborative of the defendant's

22 intent.

23         If you are convinced that the government has

24 proved all of these elements beyond a reasonable doubt,

25 say so by returning a guilty verdict on this charge.

40

1          If you have reasonable doubt about any of the

2     elements, then you must find the defendant not guilty of

3     this count.

4          And now I'll give you some further -- I'm

5     sorry, I'll give you some additional instructions to help

6     explain some of these terms.

7          The murder of a federal prosecutor in

8     retaliation for their performance of his official duties

9     would be, quote, conduct constituting a felony that has

10    as an element the use, attempted use, or threatened use

11    of physical force against the person of another in

12    violation of the laws of the United States, closed quote,

13    as that phrase is used in this instruction.

14         Now, some factors strongly corroborative of

15    intent are offers of payment, repeated solicitations,

16    expressions of seriousness, or instructions or

17    preparation about how to proceed to commit the offense.

18         Now, these are just some of the things for you

19    to consider; however, they do not have to be present.

20         Also, these factors are not exclusive or

21    conclusive.  It is for you to decide, based on the

22    totality of the circumstances whether the circumstances,

23    are strongly corroborative of intent.

24         Next, I want to say a word about the dates

25    mentioned in the indictment.

1              The indictment charges that the crimes

2    happened, quote, on or about, closed quote, certain

3    dates.  The government does not have to prove that the

4    crimes happened on those exact dates, but the government

5    must prove that the crimes happened reasonably close to

6    those dates.

7              Now, that concludes the part of my instructions

8    explaining the elements of the crimes.

9              Now, next, I'll explain the defendant's

10   position.

11             It is the defendant's position that the

12   government has not met its burden to establish the crimes

13   charged in the indictment beyond a reasonable doubt.

14             And next I'll explain some rules that you must

15   use in considering some of the testimony and evidence.

16             First, the defendant has an absolute right not

17   to testify.  The fact that he did not testify cannot be

18   considered by you in any way.  Do not even discuss it in

19   your deliberations.

20             Remember that it is up to the government to

21   prove the defendant guilty beyond a reasonable doubt.

22   It's not up to the defendant to prove that he's innocent.

23             You've heard testimony that the defendant

24   committed crimes other than the ones charged in the

25   indictment.  If you find the defendant did those crimes,

1  you can consider the evidence only as it relates to the

2  government's claim on the defendant's motive.  You must

3  not consider it for any other purpose.

4          Remember that the defendant is only on trial

5  for threatening a federal official and solicitation to

6  commit a crime of violence, and not for any other acts.

7          Do not return a guilty verdict unless the

8  government proves the crimes charged in the indictment

9  beyond a reasonable doubt.

10          You've heard the testimony of Talbert Marshal,

11  Gill Garrett, and Vernon Saunders.

12          You've also heard that before this trial, each

13  was convicted of a crime.

14          Now, these earlier convictions were brought to

15  your attention only as one way of helping you decide how

16  believable each witness's testimony was.  Do not use it

17  for any other purpose.  It is not evidence of anything

18  else.

19          Next, I want to explain something about proving

20  a defendant's state of mind.

21          Ordinarily, there's no way that a defendant's

22  state of mind can be proved directly, because no one

23  person can read another person's mind and tell what that

24  person is thinking.

25          But a defendant's state of mind can be proved

1    indirectly from the surrounding circumstances.  Now, this

2    includes things like what the defendant said, what the

3    defendant did, how the defendant acted, and any other

4    facts or circumstances in evidence that show what was in

5    the defendant's mind.

6          You may also consider the natural and probable

7    results of any acts that the defendant knowingly did or

8    did not do, and whether it's reasonable to conclude that

9    the defendant intended those results.  This, of course,

10   is all for you to decide.

11         You've also heard the testimony of

12   Gill Garrett.  You've heard that he may have received --

13   that he may receive a reduction of his sentence in

14   exchange for his cooperation in this case.  It is

15   permissible for the government to make such a promise,

16   but you should consider this testimony with more caution

17   than the testimony of other witnesses.  Consider whether

18   his testimony may have been influenced by the

19   government's promise.

20         Do not convict the defendant based on the

21   unsupported testimony of such a witness, standing alone,

22   unless you believe his testimony beyond a reasonable

23   doubt.

24         You've heard evidence that the defendant,

25   Edgar Villa-Castaneda, made a statement in which the

1    government claims he admitted certain facts.  It's for

2    you to decide whether the defendant made the statement,

3    and if so, how much weight you think it deserves.

4                In making these decisions, you should consider

5    all of the evidence about the statements, including the

6    circumstances under which the defendant allegedly made

7    it.

8                You may not convict the defendant solely upon

9    his own uncorroborated statements or admissions.

10                Now, that concludes the part of my instructions

11   explaining the rules for considering some of the

12   testimony and evidence.

13                And, now, let me finish up by explaining some

14   of the things about your deliberations in the jury room,

15   and your possible verdicts.

16                The first thing that you should do in the jury

17   room is choose someone to be your foreperson.  This

18   person will help to guide your discussions, and will

19   speak for you here in court.

20                Once you start deliberating, do not talk to the

21   jury officer, or me, or anyone else except each other

22   about the case.

23                If you have any questions or messages, you must

24   write them down on a piece of paper, sign them, and give

25   them to the jury officer.  The officer will give them to

1   me, and I will respond as soon as I can.

2          I may have to talk to the lawyers about what

3   you've asked, so it may take me some time to get back to

4   you.

5          Now, any questions or messages normally should

6   be sent to me through your foreperson.

7          The exhibits introduced during the trial will

8   also be available for your review.

9          Now, one more thing about messages.  Do not

10  ever write down or tell anyone, including me, how you

11  stand on your votes.  For example, do not write down or

12  tell anyone that you're split 6-6, or 8-4, or whatever

13  your vote happens to be.  That should stay secret until

14  you're finished.

15         And remember that you must make your decision

16  based only on the evidence that you saw and heard here in

17  court.

18         During your deliberations, you must not

19  communicate with or provide any information to anyone by

20  any means about the case.

21         You may not use any electronic device or media,

22  such as a cell phone, or computer, or the Internet, any

23  Internet service, or social media website, such as

24  Facebook or Twitter, to communicate to anyone any

25  information about the case or to conduct any research

1    about the case until I accept your verdict.

2              In other words, you cannot talk to anyone on

3    the phone, correspond with anyone, or electronically

4    communicate with anyone about the case.

5              Now, your verdict, whether it's guilty or not

6    guilty, must be unanimous.

7              To find the defendant guilty, every one of you

8    must agree that the government has overcome the

9    presumption of innocence with evidence that proves that

10   he is guilt -- that proves his guilt beyond a reasonable

11   doubt.

12             To find him not guilty, every one of you must

13   agree that the government has failed to convince you

14   beyond a reasonable doubt.

15             Either way, guilty or not guilty, your verdict

16   must be unanimous.

17             And now that all of the evidence is in, and the

18   arguments are completed, you're free to talk about the

19   case in the jury room.

20             In fact, it's your duty to talk with each other

21   about the evidence, and to make every reasonable effort

22   you can to reach unanimous agreement.  Talk with each

23   other, listen carefully and respectfully to each other's

24   views, and keep an open mind as you listen to what your

25   fellow jurors have to say.

1          Try your best to work out your differences.  Do

2     not hesitate to change your mind if you are convinced

3     that other jurors are right, and that your original

4     position was wrong.  But do not ever change your mind

5     just because other jurors see things differently, or just

6     to get the case over.  In the end, your vote must be

7     exactly that, your own vote.

8          It's important for you to reach unanimous

9     agreement, but only if you can do so honestly and in good

10    conscience.

11         No one will be allowed to hear your discussions

12    in the jury room, and no record will be made of what you

13    say.  So you should all feel free to speak your minds.

14         Listen carefully to what the other jurors have

15    to say, and then decide for yourself if the government

16    has proved the defendant guilty beyond a reasonable

17    doubt.

18         If you decide that the government has proved

19    the defendant guilty, then it will be my job to decide

20    what the appropriate punishment should be.

21         Deciding what the punishment should be is my

22    job, and not yours.  It would violate your oaths as

23    jurors to even consider the possible punishment in

24    deciding your verdict.

25         Your job is to look at the evidence and decide

if the government has proved the defendant guilty beyond

a reasonable doubt.

Now, I have prepared a verdict form that you

should use to record your verdict.

If you decide the government has proved the

charges against the defendant beyond a reasonable doubt,

say so by having your foreperson mark the appropriate

place on the form.

If you decide that the government has not

proved the charges against the defendant beyond a

reasonable doubt, say so by having the foreperson mark

that appropriate place on the form.

Your foreperson should then sign the form, put

the date on it - today is October 17th - and return it to

me.

Now, remember that the defendant is only on

trial for the particular crimes charged in the

indictment.  Your job is limited to deciding whether the

government has proved the crimes charged.

Also, remember that whether anyone else should

be prosecuted and convicted for these crimes is not a

proper matter for you to consider.  The possible guilt of

others is no defense to a criminal charge.

Your job is to decide if the government has

proved this defendant guilty.  Do not let the possible

1    guilt of others influence your decision in any way.

2              Now, let me finish up by repeating something

3    that I said to you earlier.  Nothing that I have said or

4    done during the trial was meant to influence your

5    decision in any way.  You decide for yourselves if the

6    government has proved the defendant guilty beyond a

7    reasonable doubt with respect to each count.

8              At the end of your jury instructions, you will

9    have a one-page verdict form, and I am going to clip this

10   together here as soon as I review it with you.

11             But the verdict form has the caption of the

12   case at the top, and it has questions for you to answer,

13   two questions, and a place for the foreperson to add his

14   or her name, and also juror number.  There is also a

15   place for the date.

16             And the questions read as follows:

17             We, the jury, unanimously find the following.

18   With respect to Count 1 -- with respect to the first

19   count of the indictment charging threatening of --

20   threatening a federal official, we find the Defendant

21   Edgar Villa-Castaneda, either guilty or not guilty.

22             Count 2, with respect to Count 2 of the

23   indictment charging solicitation to commit a crime of

24   violence, we find Defendant Edgar Villa-Castaneda, either

25   guilty or not guilty.

1          Those are the two questions for you to answer.

2          And, again, at the end of the verdict form,

3  there's a place for the foreperson to add his or her name

4  and also number, juror number.

5          I will tell you that before this form gets

6  filed into the record the name is removed.  It is whited

7  out, and the only information that appears in the

8  official record is the juror number.  But I do need for

9  the foreperson to actually sign the form.  But, again,

10 before it is filed in the record the name would be whited

11 out.

12          Again, you will receive the instructions.  The

13 verdict form is at the very end of the instructions.

14          You will also receive the exhibits that were

15 introduced into evidence during the trial.

16          If you want to have lunch brought in, it will

17 take about an hour to get your lunch here, and we should

18 have some menus that we'll be able to send back to you.

19 So if it appears that you want to deliberate during the

20 lunch hour, and you want to have lunch brought in, just

21 keep in mind it will take about an hour to have that

22 lunch ordered and delivered to you.

23          If you take breaks, and you'll need to take

24 rest room breaks from time to time, you should not

25 deliberate until all 12 jurors are present in the jury

51

1   room.  So if someone needs to take a break, you need to

2   stop your deliberations, wait for all 12 to be present,

3   because I want everyone to be able to hear the comments

4   and questions of the other jurors.

5            I do need to excuse our alternate before I send

6   you back to begin your deliberations.  I can't lift the

7   admonition just yet, and I'll tell you why.  For our

8   alternate it's alternate number 213.

9            In the event that we were to have a juror that

10   would become sick or unable to deliberate during the

11   course of deliberations, I would have to call you back in

12   to take the place of that juror, and the deliberations

13   would have to start again with all 12 jurors present.

14            The practice that I follow, however, is that

15   once there's a decision of the jury, if we don't have any

16   problems with a juror becoming sick or anything of that

17   nature, once we have a decision I ask the clerk to

18   contact you and tell you that we have reached a verdict.

19   And at that point the admonition is lifted, and if you

20   wish to discuss the case, you certainly are free to do

21   so.  You're not required to do so.

22            And if it should ever occur that someone would

23   approach you and ask to talk about the case, and you

24   choose not to, and the person persists, contact the

25   Court.  You don't have to deal with that yourself.  You

1    contact the Court and allow the Court to deal with that.

2            So the admonition remains in place for the

3    alternate until you're notified that a verdict has been

4    reached by the jury.

5            All right.  Any questions about that?

6            ALTERNATE JUROR NUMBER 213:  No.

7            THE COURT:  All right.  If you have any

8    materials, you can pick those up in the jury room before

9    you're excused, but otherwise you don't need to remain in

10   the courthouse.  You can either go back to work or home

11   or whatever your choice is for the day.

12           Make sure that the clerk has your phone number.

13   I think that's -- I think that's upstairs, and they will

14   contact you once a verdict has been reached.

15           All right.  We'll take a recess at this time.

16   We will be in recess to await your decision.

17           As soon as you go back, of course, wait for the

18   alternate to get any materials.  Do you have some

19   materials back here?

20           ALTERNATE JUROR NUMBER 213:  Yes, I do.

21           THE COURT:  Okay.  As soon as the alternate

22   picks up her materials, you can begin your deliberations.

23           And, again, we'll send the exhibits that were

24   introduced, as well as the jury instructions back for

25   your deliberations.

1          The jury will be excused at this time.

2      (Whereupon, the juror members leave the courtroom at

3  10:10 a.m., to begin jury deliberations, and Day 2 of the

4  Jury Trial proceedings continued on the record in open

5  court, without the juror members present, as follows.)

6          THE COURT:  Thank you again.

7          You can show her out.

8          Before we recess, I noticed just a couple of

9  typos as I was reading the instructions.  I want to make

10 sure that there are no objections to the instructions as

11 read to the jury.

12         MR. McKINESS:  There is no objection.

13         THE COURT:  Mr. Allen?

14         MR. ALLEN:  No objection, Your Honor.

15         THE COURT:  All right.  We will be in recess to

16 await the verdict of the jury.

17         Thank you.

18     (Whereupon, a recess was taken at 10:15 a.m.,

19 awaiting the verdict of the jury, and Day 2 of the

20 Jury Trial proceedings continued at 10:50 a.m., on the

21 record in open court, without the juror members present,

22 as follows.)

23         THE COURT:  Thank you.

24         I have received a note indicating that the jury

25 has reached a unanimous decision.

1              We'll bring the jury in at this time.

2         (Whereupon, the juror members enter the courtroom.)

3              THE COURT:  All right.  Thank you, and please

4    be seated.

5              The record will again reflect that all members

6    of the jury are present.

7              The attorneys and defendant are present in the

8    courtroom as well.

9              Ladies and gentlemen of the jury, have you

10   reached a decision?

11             JUROR FOREMAN:  We have.

12             THE COURT:  If you could pass the verdict form

13   to me, please.

14             All right.  Thank you.

15             I'll announce the verdict of the jury at this

16   time.

17             We, the jury, unanimously find the following:

18             With respect to Count 1, the first count of the

19   indictment charging threatening a federal official, we

20   find the defendant, Edgar Villa-Castaneda, guilty.

21             With respect to the second count of the

22   indictment charging solicitation to commit a crime of

23   violence, we find Defendant Edgar Villa-Castaneda,

24   guilty.

25             Signed by the foreperson, and dated today,

 1  October 17th, 2017.

 2              Would either party like to have the jury polled

 3  at this time?

 4              Mr. Allen?

 5              MR. ALLEN:  Your Honor, yes, we would.

 6              THE COURT:  All right.  Ladies and gentlemen,

 7  as the clerk calls your number, if you could please

 8  respond to the question of whether the verdict that I've

 9  just announced is, in fact, your verdict.  It would be

10  either yes or no.

11              Madam Clerk.

12              THE CLERK:  Juror Number 232.

13              JUROR NUMBER 232:  Yes.

14              THE CLERK:  233.

15              JUROR NUMBER 233:  Yes.

16              THE CLERK:  162.

17              JUROR NUMBER 162:  Yes.

18              THE CLERK:  172.

19              JUROR NUMBER 172:  Yes.

20              THE CLERK:  145.

21              JUROR NUMBER 145:  Yes.

22              THE CLERK:  179.

23              JUROR NUMBER 179:  Yes.

24              THE CLERK:  170.

25              JUROR NUMBER 170:  Yes.

1          THE CLERK:  171.

2          JUROR NUMBER 171:  Yes.

3          THE CLERK:  131.

4          JUROR NUMBER 131:  Yes.

5          THE CLERK:  151.

6          JUROR NUMBER 151:  Yes.

7          THE CLERK:  204.

8          JUROR NUMBER 204:  Yes.

9          THE CLERK:  And 208.

10          JUROR NUMBER 208:  Yes.

11          THE COURT:  All right.  All answer in the

12  affirmative.

13          Are there any other issues to take up before

14  the jury is excused?

15          MR. McKINESS:  No, sir.

16          MR. ALLEN:  No, sir.  Thank you.

17          THE COURT:  All right.  Ladies and gentlemen, I

18  want to thank you for your service.

19          Before I do excuse, and I do want to just

20  briefly mention your rights and obligations as jurors.

21          You -- as I told the alternate before she was

22  released, of course, you're not required to talk with

23  anyone about the case or your participation in the case.

24          But if you want to discuss the matter, you're

25  free to do so.  In other words, the admonition is lifted

1    at this time.

2              I will ask you, if you would, please, respect

3    the comments of your fellow jurors.  And so if you want

4    to talk about the case, of course, you may -- you may do

5    so, but I would ask you to respect your fellow jurors in

6    that regard.

7              Do you have any materials back in the jury

8    room?  You've taken all those -- brought all those out.

9              Well, I look forward to seeing you again.  I

10   don't know if anyone is close to finishing their service

11   in this court.  If so, then the clerk always notifies you

12   as you're -- as you're excused.  But if not, I do look

13   forward to seeing you again.

14             I do appreciate the attention that you've given

15   to me, and I certainly know that the parties appreciate

16   the attention.

17             It's been a relatively brief case as cases go

18   here in federal court, but it's always important that we

19   have jurors that do listen and pay close attention as the

20   evidence is presented, and you certainly did that.  Your

21   verdict is supported by the evidence in the case.

22             Again, you'll be excused.  The admonition is

23   lifted.

24             And you will be advised by the clerk as to when

25   you should report next if you do have additional service.

```
 1                Thank you.

 2                The jury is excused.

 3        (Whereupon, the juror members leave the courtroom.)

 4                THE COURT:  Thank you, and please be seated.

 5                The jury having returned a verdict of guilt as

 6  to each of the counts of the indictment, a sentencing

 7  hearing will be scheduled in this matter for here in

 8  Lexington on Friday, January 26th, beginning at 1:30 in

 9  the afternoon, subject to intervening orders of the

10  Court.

11                Let me confirm that there is not a conflict on

12  that date with counsel.

13                Mr. McKiness, how does that look on your

14  calendar?  I'll give you a moment.

15                MR. McKINESS:  1:30?

16                THE COURT:  Yes, sir.

17                MR. McKINESS:  No conflicts.

18                THE COURT:  All right.  Mr. Allen?

19                MR. ALLEN:  No conflicts, Your Honor.

20                THE COURT:  All right.  Again, January 26th.

21  We may run into some weather, and if we have a problem

22  with weather, we'll alert you just as soon as possible.

23                And also if you have any conflicts that

24  develop, you'll need to alert the Court, and if we need

25  to reschedule, it would probably be on a Friday, Friday
```

1    afternoon to accommodate counsel driving from Louisville.

2            But at this time, January 26th, 2018, 1:30,

3    here in Lexington.

4            We'll ask the clerk to file the note from the

5    jury indicating that they've reached a verdict, with

6    redacted copy that's available for public view, but the

7    original note with the signature and the juror's name

8    will be filed under seal.

9            And, likewise, the verdict form, the juror's

10   name will be redacted, but the original verdict form will

11   be filed in the record under seal as well.

12           All right.  And, Madam Clerk, the exhibits have

13   been returned to you, as well as the instructions?

14           THE CLERK:  Yes, Your Honor.

15           THE COURT:  If you would please check the jury

16   room after we -- after we recess.

17           Are there any other issues that need to be

18   taken up?

19           Mr. McKiness, anything for the government?

20           MR. McKINESS:  No, sir.

21           THE COURT:  Thank you.

22           Mr. Allen?

23           MR. ALLEN:  Nothing for defense, Your Honor.

24           THE COURT:  All right.  If not, we will be in

25   recess.

1          Thank you.

2       (Whereupon, Day 2 of the Jury Trial proceedings

3  concluded at 11:05 a.m.)

4                  C E R T I F I C A T E

5       I, Peggy W. Weber, certify that the foregoing is a

6  correct transcript from the record of proceedings in the

7  above-entitled matter.

8

9
   March 27, 2018                    s/Peggy W. Weber
10     DATE                          PEGGY W. WEBER, RPR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25