```
                 UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
                      CENTRAL DIVISION
                   LEXINGTON, KENTUCKY

UNITED STATES OF AMERICA,      ) Lexington Criminal
                               ) Action No. 17-18
        Plaintiff,             )
                               ) At Lexington, Kentucky
   -vs-                        )
                               ) January 26, 2018
EDGAR VILLA-CASTANEDA,         ) 1:30 p.m.
                               )
        Defendant.             )
```

```
         TRANSCRIPT OF SENTENCING HEARING PROCEEDINGS
            BEFORE THE HONORABLE DANNY C. REEVES
                UNITED STATES DISTRICT JUDGE
```

Appearances of Counsel:

On behalf of Plaintiff:        ADRIEN S. McKINESS, JR., ESQ.
                               Assistant U.S. Attorney
                               717 West Broadway
                               Louisville, Kentucky  40202

On behalf of Defendant:        BENJAMIN D. ALLEN, ESQ.
                               Gess Mattingly & Atchison, PSC
                               201 West Short Street
                               Lexington, Kentucky  40507

Court Reporter:                PEGGY W. WEBER, RPR
                               Official Court Reporter
                               U.S. District Court
                               P.O. Box 362
                               Lexington, Kentucky  40588
                               (859) 421-0814

Proceedings recorded by mechanical stenography,
transcript produced by computer.

1     (Whereupon, the Sentencing Hearing proceedings

2 commenced on Friday, January 26, 2018, at 1:30 p.m., on

3 the record in open court, as follows.)

4          THE COURT:  Thank you.

5          Madam Clerk, if you would call the matter

6 scheduled for 1:30, please.

7          THE CLERK:  Yes, Your Honor.

8          Lexington Criminal Action Number 17-18,

9 United States of America versus Edgar Villa-Castaneda,

10 called for sentencing.

11          THE COURT:  Thank you.

12          If counsel would state their appearances,

13 please.

14          Mr. McKiness.

15          MR. McKINESS:  Good afternoon, Your Honor.

16          Spencer McKiness here for the United States.

17          THE COURT:  Thank you.

18          Mr. Allen.

19          MR. ALLEN:  Good afternoon, Your Honor.

20          Ben Allen on behalf of the defendant,

21 Edgar Villa-Castaneda, who is seated to my right.

22          THE COURT:  All right.  Thank you.

23          This matter is scheduled for a sentencing

24 hearing this afternoon.

25          Before we proceed with the hearing, let me

1    first confirm that Mr. Villa-Castaneda has had the

2    opportunity to review his presentence report and discuss

3    it with his attorney to his satisfaction.

4              Is that correct?

5              MR. ALLEN:  He has, Your Honor.

6              THE COURT:  All right.  The presentence report

7    will be filed in the record of this proceeding.  It is

8    available if the -- should be needed by the parties.

9              I will advise the defendant that if he should

10   request a copy of the Presentence Investigation Report

11   during the term of incarceration, that the report would

12   only be provided in accordance with the Bureau of Prisons

13   policies and location approved by the warden of the

14   institution.

15             I believe there have -- were some objections to

16   the presentence report that have been resolved.  There

17   are none at this point that are -- that have not been

18   resolved that affect the guideline calculation.

19             Let me confirm that to be the case.  Mr. Allen.

20             MR. ALLEN:  That is correct, Your Honor.  We

21   had one, I guess, unresolved objection relating to a

22   conviction, but that did not affect his criminal history

23   category.

24             THE COURT:  You can certainly address that at

25   the appropriate time.

1          I will, however, adopt the findings that are

2    contained in the report, as well as the guideline

3    calculations.

4          I will also adopt the findings in the revised

5    calculations as they apply to the fine range that are set

6    forth in the addendum to the presentence report.

7          This was a matter that proceeded to trial.  The

8    defendant was convicted by a jury as to two counts;

9    Count 1, threatening to murder a federal official;

10   Count 2, solicitation to commit murder.

11         I will review the guideline calculations with

12   the parties in just a moment.

13         Before I do that, let me remind counsel that if

14   there are any additional factors that you would like to

15   call to my attention that are relevant to sentencing

16   under Title 18, Section 3553, please do so during

17   allocution in the case.

18         Turning to the guideline calculations, the

19   offense level calculations begin in the report

20   paragraph 18.

21         The 2016 edition of the guideline manual has

22   been used.  I do note for the record that there were no

23   amendments to the manual in 2017; and, therefore, the

24   2016 manual is applied.

25         The two counts of conviction are grouped for

1    purpose of calculating a guideline range.

2            Count 1 has an adjusted offense level of 28.

3    There are those adjustments that are set forth in

4    paragraphs 20 through 27 that are not subject to any

5    objections.  So the adjusted offense level for Count 1

6    would be 28.

7            For Count 2, with the two adjustments that are

8    identified, the adjusted offense level would be a level

9    43.

10           There is no acceptance of responsibility credit

11   because the defendant proceeded to trial and contested

12   the charges, both in Counts 1 and 2.

13           Information regarding his criminal history is

14   also contained in the report.  Mr. Villa-Castaneda has

15   five criminal history points, and that would place him in

16   Criminal History Category III for purposes of calculating

17   the guideline range in the case.

18           And with those numbers with the total offense

19   level 43 and a criminal history category of III, the

20   guideline range is a range of life imprisonment.

21           That range is greater than the maximum

22   punishment per count of conviction.

23           Count 1 the maximum term is 120 months, and

24   Count 2 the maximum term is 240 months.  And if the Court

25   runs the sentences for each count consecutively, that

1  would be a maximum term of 360 months that could be

2  imposed in the case.

3           The guideline range for supervision in this

4  matter is set forth in paragraph 67.  That's a range of

5  one to three years for supervised release.

6           The fine range in the case is a range of 25,000

7  on the low end and $125,000 on the upper end of the

8  guideline range, and that is set forth in paragraph 73,

9  as amended and reflected in the addendum to the report in

10 response to defendant's objection to that number.

11          Those are the relevant guideline calculations

12 in this matter that have been adopted.

13          There are no other counts in this case and no

14 counts to be dismissed, but let me confirm that there are

15 no other motions to be taken up.

16          Mr. McKiness, any motions that need to be

17 addressed?

18          MR. McKINESS:  There are no motions from the

19 United States.

20          THE COURT:  All right.  Mr. Allen?

21          MR. ALLEN:  No motions from the defendant,

22 Your Honor.

23          THE COURT:  All right.  If not, we will proceed

24 with allocution.

25          Mr. Allen, as you know, it's my practice, I'll

1   hear from you initially.

2           And also, Mr. Villa-Castaneda, if you'd like to

3   address the Court, you certainly may do so.

4           After I've heard statements from the

5   United States, Mr. Allen, if you would like to respond,

6   you may do that as well.

7           All right.  You may proceed.

8           MR. ALLEN:  Thank you, Your Honor.

9           Your Honor, while we've acknowledged that the

10  guidelines are correctly calculated and that these

11  charges are indeed serious, as you'll note in our

12  sentencing memorandum, we have asked the Court to run

13  each count concurrently and run the total sentence

14  concurrently with his current sentence for which I

15  believe he still needs to serve approximately 12 years.

16          As I said again, obviously, we understand the

17  serious nature of the charges and the serious nature of

18  the convictions that have been sustained here.  However,

19  the Court, of course, has discretion to fashion a

20  concurrent or consecutive sentence or even a partially

21  concurrent, partially consecutive sentence in this case.

22          THE COURT:  Under Section 5G1.3 I believe?

23          MR. ALLEN:  That's correct, Your Honor.

24          And as I noted in my sentencing memorandum,

25  Mr. Villa has a large family with which he -- and he's

1    close to his mother and his family members.  He has a

2    sister who lives here in Lexington who is battling --

3    currently battling an illness.

4            He realizes even in the most lenient case he

5    will not be released in quite some time, but his hope is,

6    Your Honor, that the Court would fashion a sentence that

7    would not essentially result to him spending the rest of

8    his life in prison, which would likely happen if it ran

9    the 30 years consecutively with his current sentence.

10           He would appreciate the opportunity to be

11   released eventually to see his family, see his family in

12   Mexico, and elsewhere.

13           And so for that reason, Your Honor, we would

14   ask for a sentence that runs concurrently with his

15   current undischarged term of imprisonment.

16           With respect to supervised release, as noted in

17   the memo, Your Honor, since there is the ICE detainer

18   against him, and also considering likely length of his

19   term in prison, we ask the Court not to impose a term of

20   supervised release upon -- at the conclusion of his

21   sentence.

22           THE COURT:  Didn't Judge Caldwell impose a

23   five-year term of supervision?

24           MR. ALLEN:  Under -- in his previous case --

25           THE COURT:  Yes, sir.

 1                    MR. ALLEN:  -- I believe that is correct.

 2                    THE COURT:  So he'll have a term of supervision

 3     regardless.  So if this Court runs it -- imposes a term

 4     of supervision, runs it concurrently, it would not

 5     increase the length of supervision.

 6                    MR. ALLEN:  That is correct.

 7                    THE COURT:  All right.

 8                    MR. ALLEN:  And with that, Your Honor, I repeat

 9     our request for a fully concurrent sentence in this

10     matter.

11                    THE COURT:  All right.

12                    MR. ALLEN:  Thank you.

13                    THE COURT:  Mr. Villa-Castaneda, would you like

14     to add anything to what Mr. Allen has said on your

15     behalf?

16                    THE INTERPRETER:  I only want to thank you.

17              I am a man of God.  I'm going to -- I am a man

18     of God, and I am going to ask God in my prayers to

19     forgive all of the people who sentence me.

20              This is all I have to say, and I wish everyone

21     here a good day.

22                    THE COURT:  All right.  Thank you.

23                    Mr. McKiness.

24                    MR. McKINESS:  Thank you, Your Honor.

25                    THE COURT:  Oh, first, Mr. McKiness, I should

1    confirm for the record that you're not intending to

2    submit a statement of the victim in the matter?

3            MR. McKINESS:  That is correct.

4            THE COURT:  The Court will certainly consider

5    the testimony that was offered of Mr. Duncan during the

6    trial, who is the identified victim in the case.  But

7    you're not intending to submit any other information or

8    request for restitution by the victim; is that accurate?

9            MR. McKINESS:  That is accurate.  There is no

10   request for restitution, and the only statements the

11   United States would reference from the victim would be

12   from the trial.

13           THE COURT:  All right.  Very well.  Thank you.

14           MR. McKINESS:  Thank you.

15           The United States is asking for a sentence of

16   360 months to run consecutive.  The United States

17   believes that that is the best way to punish Mr. Villa

18   for its criminal actions and reflect -- excuse me --

19   reflect the seriousness of his crimes.

20           Mr. Villa is a dangerous man who was involved

21   with dangerous people and attempted to have Assistant

22   United States Attorney Mr. Duncan killed simply for doing

23   his job.

24           People like Mr. Villa need to be sentenced

25   harshly to deter him and others from engaging in violent

1   acts against those of us who have taken an oath to uphold

2   the law and prosecute the law.

3          The public needs to know that individuals that

4   try to subvert the justice system by threatening those

5   involved in the justice system will be punished to the

6   fullest extent of the law.

7          Other inmates in jail on federal charges need

8   to know that threats against prosecutors and attempts on

9   our lives are wholly unacceptable and will result in the

10  harshest punishments available.

11         Otherwise, criminals like Mr. Villa will become

12  emboldened and believe that they can come after

13  prosecutors for doing our job without much punishment to

14  themselves.

15         Mr. Villa is essentially unrepentant, has never

16  shown any remorse for his actions, has never apologized,

17  and has not accepted any responsibility whatsoever for

18  the fear and anxiety that caused Mr. Duncan and his

19  family.

20         Nor has he shown any remorse for the repeated

21  drain it has been on the government's resources that

22  caused the federal agencies to divert resources to

23  protect those that were threatened by Mr. Villa.

24         He's repeatedly shown a lack of respect for the

25  law.  Excuse me.  Mr. Villa put himself in this position

1   by attempting to hire someone to kill Mr. Duncan for

2   doing his job.  He needs to reap what he sows here.

3   There's truly no place in society for people like

4   Mr. Villa.

5           I would argue for a life sentence if I could,

6   which is what the guidelines recommend, but as the Court

7   has pointed out, the statutory maximum caps out at 30

8   years.

9           Therefore, United States believes that a

10  30-year or 360-month consecutive sentence, is sufficient

11  but not more than necessary to satisfy the considerations

12  of Section 3553(a).

13          With regard to running his sentence concurrent

14  or consecutively, obviously, United States believes that

15  Mr. Villa's sentence should run consecutive to his

16  undischarged time from his prior conviction.

17          The sentencing guidelines allow for a

18  concurrent sentence in this case.  Section 5G1.3(d) of

19  the sentencing guidelines is essentially the residual

20  clause of that section in dealing with whether a sentence

21  should run concurrently, consecutively, or partially

22  consecutively, because none of the other subsections of

23  5G1.3 apply to this situation, the Court should apply the

24  residual clause of subsection (d).

25          Subsection (d) states that in any other case

1   involving an undischarged term of imprisonment, the

2   sentence for the instant offense can run concurrently,

3   partially concurrently, or consecutively to the

4   undischarged term of imprisonment to achieve a reasonable

5   sentence.

6          Application note 4A to Section 5G1.3 sets out

7   several factors for the Court to consider when

8   determining how to run the sentences.  The Court is to

9   consider the following five factors.

10          The first is Section 3553(a) factors, which

11  essentially are the factors that I've just argued, the

12  type and length of the undischarged sentence, the time

13  served on the undischarged sentence, the fact that the

14  prior sentence may have been imposed at a different time

15  in front of the same or a different Federal Court, and,

16  lastly, any other circumstances relevant to the

17  determination of an appropriate sentence in the instant

18  case.

19          Now, based on those factors in application

20  note 4, the United States believes that this Court should

21  order the sentence of the instant offense to run

22  consecutive to the undischarged term of imprisonment from

23  his prior felony offense.

24          As I stated, I've essentially already gone

25  through some of the 3553(a) factors, so I'm not going to

1    just repeat those, except to say that those factors

2    support a consecutive sentence based upon the seriousness

3    and the deterrent effect and the message to the public.

4         Regarding Mr. Villa's undischarged sentence of

5    imprisonment, the Bureau of Prison's website states that

6    his release date would be December 3rd, 2029, or

7    approximately 12 years from now, as defense counsel has

8    stated.

9         The Court should consider that the guidelines

10   recommend a lifetime sentence, and that Mr. Villa is

11   currently 43 years old.  And if a 30-year sentence were

12   to run concurrently to the undischarged sentence, Villa

13   would be -- Mr. Villa would be approximately 85 years old

14   when he is released.

15        THE COURT:  That assumes no good conduct.

16        MR. McKINESS:  That assumes no good conduct

17   time, that is correct.  And -- and that's if it runs

18   consecutively.  And if the sentences were to run

19   concurrently, Mr. Villa would be approximately 73 years

20   old when he's released.  Again, that is without

21   calculation of good time credit.

22        Now a consecutive sentence would, therefore, be

23   more akin to a life sentence than a concurrent one, but

24   the guidelines recommend a lifetime sentence so a

25   consecutive sentence would be more in line to what the

1    guidelines recommend.

2         And when looking at the time served on the

3    undischarged sentence, Mr. Villa is only really just

4    begun to start his sentence if he was sentenced to 204

5    months back in October 21 of 2016 in his prior federal

6    case, and that was just one month after he committed the

7    instant crime that we're sentencing him on here today.

8    Just a little over a year ago.  United States believes

9    that factor also supports a consecutive sentence.

10        With regards to the fourth factor,

11   United States -- and I should say, I don't really know

12   how to analyze that factor with regards to this case.  I

13   can't say whether it would work in the defendant's favor

14   or not, so I'm just going to skip that factor and move on

15   to the final factor.

16        Any other circumstance relevant to the

17   determination of appropriate sentence, that factor takes

18   into account any other circumstances, obviously, relevant

19   to this Court's determination.

20        The main circumstance the United States

21   believes that this Court should consider is that

22   Mr. Villa is an offense level 43, the highest possible

23   offense level in the guidelines; and, therefore, subject

24   to the highest possible sentence of life.

25        But because of the statutory maximum of

1  360 months or 30 years, this Court cannot give Mr. Villa

2  a life sentence.

3          The Court is to run the 30-year sentence

4  concurrent to Mr. Villa's undischarged sentence of

5  approximately 12 years, then the Court -- consecutive,

6  sorry, the Court could at least inch towards the more

7  reasonable sentence given the nature of the crime and the

8  recommended sentence of the guidelines.

9          And because at least four of the five factors

10  set out in the application note 4 of 5G1.3 in favor of a

11  consecutive sentence, the United States believes that

12  this Court should order Mr. Villa's sentence to run

13  consecutive to his undischarged federal sentence.

14          The United States also believes that a term of

15  supervised release is appropriate, a term of three years

16  as required by the statute.

17          THE COURT:  All right.  Mr. McKiness, if -- if

18  I impose a term of supervision that's concurrent, if the

19  defendant is released and he violates a term of

20  supervision, one Judge may decide that that's not worthy

21  of revocation, while another Judge may certainly do that.

22  And that might favor imposition of a term of supervision;

23  although, the terms could still run concurrently.  Would

24  you agree with that?

25          MR. McKINESS:  I believe that the term of

1   supervision could run concurrent, yes, sir.

2          THE COURT:  But still it could result in one

3   Judge imposing a penalty if there's a violation, while

4   the other may feel that it's not necessary, but it would

5   provide additional protection?

6          MR. McKINESS:  That is true.

7          THE COURT:  Two views of the same conduct?

8          MR. McKINESS:  Yes, sir.

9          THE COURT:  All right.  Thank you.

10          Mr. Allen?

11          MR. ALLEN:  Thank you, Your Honor.

12          Your Honor, as I noted, of course, the Court

13   has the discretion to impose a sentence as the guidelines

14   set out partially concurrently, fully concurrently.

15          Obviously, I think factor two and note 4 favors

16   a concurrent sentence here in that he still has a lengthy

17   undischarged sentence, 12 years.

18          If this Court were even to, for example, run

19   both counts -- run both counts concurrently for 30 years

20   and then add fully concurrently with his current

21   sentence, he's still looking at, I believe, 18 --

22   assuming again no good time credit, 18 years that he has

23   to serve out at the conclusion of his currently

24   undischarged sentence.  That's a significant sentence.

25   That's in total 30 years of his life behind bars, and

1    he'll be in his 70s when he's released.  You know, the

2    average life span you figure is in the 70s and 80s,

3    that's almost a life sentence as it is.

4              So all I'm asking for Mr. Villa is an

5    opportunity to some day after serving a lengthy sentence

6    be able to be released to return to his family.  I think

7    on balance the factors favor at least something along

8    those lines.

9              I understand what the guidelines call for.  I

10   understand what the statutory maximum is, and obviously

11   I'm not here to argue that these charges aren't serious.

12   All I'm asking is the full factors of this case that the

13   Court run whatever sentence it does impose currently with

14   his currently undischarged conduct.

15             Thank you.

16             THE COURT:  All right.  Thank you.

17             There are a number of factors that are to be

18   taken into account in determining an appropriate

19   sentence, and here as the parties clearly acknowledge

20   through their arguments, the question really becomes

21   whether the sentence that's to be imposed should run

22   consecutive or concurrent to the undischarged term of

23   incarceration that was imposed in a very serious drug

24   case in which the defendant received a sentence of 204

25   months that was -- it was imposed by this Court by a

1  different Judge in October of 2016.

2         And some of the factors that the Court

3  considers in making that determination are factors that

4  are to be considered, the 3553 factors, those same

5  factors.  They're listed in application note 4 to 35 --

6  excuse me, to 5G1.3, application note 4.  Note 4(a)(1)

7  identifies the factors set forth in Section 3584, but it

8  references 3553(a).

9         And the Court also considers, of course, the

10  type and length of the prior undischarged sentence, and

11  that's been discussed quite a bit, as well as --

12         THE INTERPRETER:  Your Honor, forgive me for

13  interrupting.  There is too much background noise behind

14  me.  I am sorry.

15         THE COURT:  I agree.  I'll try to speak a

16  little bit louder.

17         THE INTERPRETER:  I appreciate it, Your Honor.

18         THE COURT:  Yes, ma'am.

19         All right.  Additional factors include, of

20  course, the time served on the undischarged sentence and

21  the time likely to be served before release.

22         The fact that the prior undischarged sentence

23  may have been imposed by a state rather than a Federal

24  Court, and Mr. McKiness correctly points out that that

25  may not be a factor of consideration here.  We're talking

1   about two federal sentences, or at a different time

2   before the same or different Court, that would apply.

3   It's essentially the same court but different sentencing

4   Judges, and so an argument could be made it's a different

5   sentencing -- federal sentencing Court, and any other

6   circumstance relevant to the determination, in essence, a

7   catchall provision.

8           So let's look at the 3553(a) factors first.

9   They do not favor a concurrent sentence.  Instead, they

10  favor a consecutive sentence in this particular case.

11          When we look at the -- the nature and

12  circumstances of the offense, this is a very serious

13  offense, and it is one in which the defendant, as the

14  United States correctly notes, the defendant has not

15  acknowledged responsibility or indicated remorse for his

16  actions.

17          The case did proceed to trial obviously, and

18  the defendant contested the charges in the case.  The

19  jury concluded to the contrary, and the Court finds that

20  there was certainly sufficient evidence to sustain the

21  conviction, and the defendant's actions were in violation

22  of two very serious statutory provisions.

23          When we discuss also the other history and

24  characteristics of the defendant, they're not positive

25  when we look at his -- at his criminal history.  Those

1  are not positive characteristics.

2          He is in the country illegally as well.  He's

3  not charged for that here, but that is an indication of

4  further disrespect for the laws of the United States.

5          The seriousness of the offense really cannot be

6  overstated, and I agree with the United States in it's

7  evaluation of how serious it is when officers such as an

8  Assistant United States Attorney is threatened, or there

9  are attempts that are made to do harm or injury or cause

10 death to such an individual.

11          And under those circumstances I believe that to

12 impose a concurrent sentence would unduly depreciate the

13 seriousness of the offenses of conviction.

14          And, again, while the statute provide -- the

15 two statutes provide maximum penalties in this matter, if

16 this were a guideline determination only, the defendant

17 would be looking at a life term of incarceration.

18          There is a need to provide deterrence not only

19 for this defendant but for others that would be inclined

20 to commit a similar offense.  The issue of deterrence

21 does not favor a concurrent sentence.

22          And, likewise, the need to protect the public

23 would not as well.

24          The Court is mindful of the fact that it may

25 certainly do so, and that the guidelines are not binding,

1  but under the circumstances that are presented here, it

2  would not be appropriate to impose a concurrent sentence

3  but instead a consecutive sentence would be necessary to

4  meet all of the statutory factors of 3553.

5           Those are considered not only as sentencing

6  factors, but they are considered under Section 5G1.3,

7  application note 4A.

8           The Court also considers the prior sentence,

9  the length of the prior sentence as well.  It is a

10 lengthy sentence of -- with approximately 12 years

11 remaining, but that would not cause the Court to impose

12 either a concurrent or partially concurrent sentence.

13          And the Court in making that analysis also

14 considers the time likely to be served prior to the

15 defendant being released.  And even assuming that he

16 would not receive good time credit on the underlying --

17 or the earlier sentence, or this sentence, believes that

18 notwithstanding that, that a consecutive sentence would

19 be warranted.

20          And then the Court also considers other

21 circumstances that would be relevant to the

22 determination, and I have addressed those.  They are

23 related matters in 3553, including, of course, the

24 defendant's history and characteristics, and also the

25 need for the sentence to be sufficient but not greater

1   than necessary.

2          So making that determination, the Court does

3   find that a consecutive sentence would be appropriate and

4   would be necessary to meet all of the factors of 3553.

5          That is essentially the defendant's primary

6   argument in the case, but I also consider the other

7   issues that have been raised, including family ties and

8   responsibilities that have not prevented the defendant

9   from engaging in various forms of criminal activity, the

10  counts of conviction here, as well as other criminal

11  actions that are reflected in the presentence report.

12         There is an ICE detainer with regard to the

13  issue of supervision.  As I've indicated through my

14  questions and responses to counsel, I believe that it is

15  appropriate for this Court to impose a term of

16  supervision, but it will be concurrent.  I will run that

17  concurrent with the undischarged term, the term of

18  supervision imposed in that matter.

19         And for the record that is Lexington Criminal

20  Action Number 15-CR-13.  I believe that's the conviction

21  on the fourth superseding indictment.  So the term of

22  supervision will be concurrent but not the sentence.

23         The defendant has also made a statement to the

24  Court, but in his statement, again, he has not expressed

25  any remorse for his actions.

1            And as the United States indicates, it is

2    necessary for not only the public but for others that

3    would be inclined to commit similar offenses to

4    understand and to realize that if they do engage in that

5    type of conduct that there is very harsh punishment that

6    is available.

7            And in this case, for example, the defendant

8    was originally sentenced to 204 months for the case that

9    I just referenced, but while incarcerated on those

10   charges decided to make these threats, and the affect of

11   his actions, not only making the threats but in

12   attempting to harm an Assistant United States Attorney,

13   has increased his sentence effectively from four years to

14   what in all likelihood will be a life sentence, and that

15   is appropriate based on his actions in this particular

16   case.

17            I'll announce the sentence.

18            And it will be the sentence of this Court

19   pursuant to the Sentencing Reform Act of 1984 as modified

20   by the decisions in Booker and Fanfan, and I do find that

21   the following sentence would be sufficient but not

22   greater than necessary to comply with the purposes of

23   Title 18, Section 3553(a).

24            And, therefore, it will be the judgment of the

25   Court that the defendant, Edgar Villa-Castaneda, will be

1  committed to the custody of the Bureau of Prisons for a

2  term of 120 months on Count 1 and 240 months on Count 2,

3  to be served consecutively, to produce a total term of

4  incarceration of 360 months.

5        The sentence imposed in this case will be

6  served consecutively to the sentence imposed in

7  Lexington Criminal Action Number 15-CR-13-KKC, the fourth

8  superseding indictment matter.

9        It will be recommended to the Bureau of Prisons

10  that the defendant participate in a job skills and

11  vocational training program, and that he also participate

12  in anger management, any anger management program for

13  which he would qualify during the period of

14  incarceration.

15        Upon release, he will be placed on supervision

16  for a term of three years on each of Counts 1 and 2, to

17  run concurrently for a total of three years.  And as I

18  indicated, that will run concurrently with case 15-CR-13.

19        Within 72 hours of release from the custody of

20  the Bureau of Prisons he must report in person to the

21  probation office in the district in which he is released.

22        While on supervised release, the defendant may

23  not commit another federal, state, or local crime.  He

24  must comply with the mandatory and the standard

25  conditions that are -- that will be set forth in the

1 | judgment and commitment order and that have been adopted

2 | by this Court.

3 | He also must comply with the following

4 | additional conditions, and they include that he not

5 | possess a firearm, destructive device, ammunition, or a

6 | dangerous weapon, and that he refrain from any unlawful

7 | use of a controlled substance.

8 | He must submit to one drug test within 15 days

9 | of release and at least two periodic drug tests

10 | thereafter.

11 | The special conditions that will be imposed

12 | will include that he must attend, successfully complete,

13 | and pay for any diagnostic evaluations and treatment or

14 | counseling program -- programs for anger management as

15 | directed by the probation office.

16 | If he is deported, he may not re-enter the

17 | United States without receiving permission from the

18 | United States Bureau of Immigrations and Customs

19 | Enforcement and/or the Attorney General.

20 | However, if he would -- or should re-enter the

21 | United States during the effective term of supervision,

22 | he must report to the United States Probation Office, the

23 | closest United States Probation Office, for service of

24 | supervision.

25 | Likewise, he may not have any contact either

1  directly or indirectly with the identified victim in the

2  case.

3          He will be required to submit his person,

4  property, house, residence, vehicle, computer, as that

5  term is defined by Title 18, Section 1030(e)(1), but it

6  includes other devices that are excluded from the

7  definition.

8          He must submit any other electronic

9  communication or data storage devices or media or any

10 office to a search conducted by the United States

11 Probation Office.  Failure to submit to a search would be

12 grounds for revocation of release.

13         He must warn any other occupants that the

14 premises would be subject to search pursuant to this

15 condition.

16         The fine in this matter, fine range, is a range

17 of 25,000 to $125,000.  I do conclude that the defendant

18 does not have the ability to pay a fine within the range.

19 However, the Court may consider a lesser fine under the

20 factors set forth in 5E1.2, subsection (d), and those

21 factors include the need for the combined sentence to

22 reflect the seriousness of the offense, to promote

23 respect for the law, and provide just punishment, as well

24 as afford adequate deterrence.

25         The Court considers all the other factors,

1   including his ability to pay and his earning capacity,

2   which obviously will be limited to sums that he would be

3   able to receive through work while allowed through the

4   Bureau of Prisons system.

5           The Court considers the burden that that may

6   place upon the defendant and his family, and also the

7   expected cost to the government of any term of

8   incarceration or supervision and all other factors.

9           And when I consider those factors, I have

10  determined that a fine below the range would be

11  appropriate, and the Court will impose a fine of $6,000

12  in this matter.

13          The Court will direct the defendant to comply

14  with the Bureau of Prisons Inmate Financial

15  Responsibility Program.

16          In paying that fine, the Court will also impose

17  a special assessment of $200, and those matters -- those

18  amounts will be due immediately, but again the defendant

19  will be subject to paying those matters also through the

20  Inmate Financial Responsibility Program.

21          And in the event the amount is not fully paid,

22  if and when the defendant is released from supervision,

23  the Court would establish an installment payment schedule

24  at that time.

25          That will be the judgment of the Court.

1          In just a moment I will ask the clerk to advise

2    the defendant of his right of appeal with regard to the

3    conviction and the sentence in the case.

4          Before I do that I'll entertain any objections

5    that the parties may have.

6          Mr. McKiness, it's my practice to ask the

7    following questions at this time with regard to

8    objections.

9          First would be whether there are any objections

10   to the sentence announced and any conditions of

11   supervision that I've announced.

12         Second would be any objections under

13   United States versus Bostic.  Under that decision from

14   the Sixth Circuit any objections not previously raised

15   would need to be raised at this time so that they may be

16   addressed by the Court and preserved for review on

17   appeal.

18         And, finally, if you would like me to make

19   additional findings to support the sentence that has been

20   announced, I will certainly do so if requested.

21         MR. McKINESS:  The United States has no further

22   objections, and I'm familiar with the Bostic objections.

23   We have none of those, and the United States believes

24   that the record is clear so...

25         THE COURT:  So no need for additional findings?

1          MR. McKINESS:  No need, Your Honor.

2          THE COURT:  All right.  Thank you.

3          Mr. Allen?

4          MR. ALLEN:  For the record Mr. Villa would

5 object to the sentence imposed in this case, although, he

6 has no objections to the terms of the supervised release,

7 but he would object to the sentence on both procedural

8 and substantive grounds.

9          THE COURT:  That would include the Court's

10 determination as to running the sentence consecutive as

11 opposed to concurrently?

12          MR. ALLEN:  That's correct.  Thank you.

13          THE COURT:  That objection is preserved and is

14 noted for the record.

15          Madam Clerk.

16          If you would like, you can provide a copy of

17 that to the interpreter.

18          THE CLERK:  I have provided her a copy.

19          THE COURT:  Have you provided?  All right.

20          THE INTERPRETER:  We have it, Your Honor.

21          THE COURT:  All right.  If you would like to

22 wait, the clerk will read this and if you would like to

23 wait and then review it at that time, you may certainly

24 do so.

25          THE INTERPRETER:  Thank you, Your Honor.

31

1          THE COURT:  All right.  Thank you.

2          THE CLERK:  You are notified by this Court that

3    you have a right to appeal your case to the Sixth Circuit

4    of Appeals, which on proper appeal will review this case

5    and determine that there has or has not been an error of

6    law.

7          If you're unable to pay for the cost of the

8    appeal, you have a right to apply for leave to appeal in

9    forma pauperis, which means you may appeal without paying

10   for it.

11         If you are without the services of an attorney

12   and desire to appeal, upon request the clerk of this

13   court shall prepare and file forthwith a notice of appeal

14   on your behalf.

15         With few exceptions this notice of appeal must

16   be filed within 14 days from the date of entry of this

17   judgment.

18         If you do not have sufficient funds to employ

19   an attorney, the Court of Appeals may appoint your

20   present attorney, or another, to prosecute the appeal for

21   you.

22         You may request to be released on a reasonable

23   bond pending the appeal.

24         THE COURT:  All right.  Thank you.

25         (Whereupon, the interpreter reads the appeals rights

1  to the defendant, and the defendant signs the form.)

2          THE COURT:  The record will reflect the right

3  of appeal was reviewed with the defendant with counsel

4  and the interpreter, and he's executed that document and

5  has retained one copy for his records.

6          All right.  Are there any other issues that we

7  need to take up in this case at this time?

8          Mr. McKiness, anything else?

9          MR. McKINESS:  No, sir.

10          THE COURT:  Mr. Allen?

11          MR. ALLEN:  No, Your Honor.  Thank you.

12          THE COURT:  All right.  We'll be in recess

13  until 2:30 this afternoon.

14      (Whereupon, the Sentencing Hearing proceedings

15  concluded at 2:15 p.m.)

16              C E R T I F I C A T E

17      I, Peggy W. Weber, certify that the foregoing is a

18  correct transcript from the record of proceedings in the

19  above-entitled matter.

20

21

   March 27, 2018                    s/Peggy W. Weber
22      DATE                         PEGGY W. WEBER, RPR

23

24

25